447 So.2d 933 (1984)
Ronald Ellis REED, Appellant,
v.
The STATE of Florida, Appellee.
No. 82-206.
District Court of Appeal of Florida, Third District.
March 13, 1984.
*934 Jeffrey A. Ward, Miami, for appellant.
Jim Smith, Atty. Gen., and Calianne P. Lantz, Asst. Atty. Gen., for appellee.
Before BARKDULL, NESBITT and DANIEL S. PEARSON, JJ.
NESBITT, Judge.
The defendant appeals from the denial after evidentiary hearing of his motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. We affirm.
The circumstances out of which the defendant's conviction arose may be briefly summarized. Late in the evening of September 10, 1981, the victim was killed while allegedly standing on the highway between his disabled vehicle and attached U-Haul *935 trailer. The investigating officer, relying upon the physical evidence which he observed at the scene, concluded that death was caused by the impact of the defendant's vehicle into the back of the trailer hurling the deceased into the concrete median strip.
The defendant was arrested and transported to the Dade County jail where a breathalyzer test was administered. The test indicated that the defendant had a blood alcohol level of.23%.[1]
Reed was charged with manslaughter by operating a motor vehicle while intoxicated in violation of Section 860.01(2), Florida Statutes (1979). On the advice of privately-retained counsel, he pled guilty and was sentenced to ten-years probation, conditioned on his serving one year in jail, surrendering his driver's license for five years,[2] and performing 500 hours of community service. After a motion to mitigate the sentence was denied, the defendant, through substituted counsel, filed his Rule 3.850 motion. An evidentiary hearing was held, subsequent to which the order appealed from was entered.
The defendant's motion for post-conviction relief was predicated upon his claim that his trial attorney provided ineffective assistance thereby causing the defendant's guilty plea to be unknowingly and unintelligently entered. More specifically, Reed alleged that counsel: (1) incorrectly advised him that if he pled guilty he would not receive any jail time; (2) failed to adequately prepare for the case; (3) failed to investigate the possible defense presented by the sole "eyewitness," Mr. Woodberry; (4) failed to inform him of that possible defense; and (5) failed to move to suppress the breathalyzer test.

THE STANDARD
The Florida supreme court, in Knight v. State, 394 So.2d 997 (Fla. 1981), has recently adopted the standards by which we may determine whether an attorney represented his client in a reasonably competent manner. The following fourstep analysis must be undertaken. First, the specific omission or overt act upon which the claim of ineffective assistance of counsel is based must be detailed in the appropriate pleading. Second, the defendant has the burden of showing that this specific omission or overt act was a substantial and serious deficiency measurably below that of competent counsel. Third, the defendant has the burden of showing that this deficiency was substantial enough to demonstrate a prejudice to the defendant to the extent that there is a likelihood that the deficient conduct affected the outcome of the court proceedings; and fourth, if the defendant makes a prima facie showing of prejudice, the state still has the opportunity to rebut these assertions by showing, beyond a reasonable doubt, that there was no prejudice.
In discussing the second step, the supreme court recognized that death penalty cases are different and consequently counsel's performance must be judged in light of those circumstances. Similarly, we find that when the defendant pleads guilty, the analysis of what is a substantial and serious deficiency must be considered within that framework. See Castro v. State, 419 So.2d 796 (Fla. 3d DCA 1982); Pollinzi v. Estelle, 628 F.2d 417 (5th Cir.1980).
A conviction based upon a plea of guilty rests upon the defendant's own admission in court that he did in fact commit the crime with which he is charged. Such a plea constitutes a waiver of fundamental constitutional rights as well as all nonjurisdictional defenses known and unknown. Bradbury v. Wainwright, 658 F.2d 1083 (5th Cir.1981), cert. denied, 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982); Edwards v. United States, 256 F.2d 707 (D.C. Cir.), cert. denied, 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed.2d 82 (1958). Guilty pleas are *936 meant to be, and should be final, Colson v. Smith, 438 F.2d 1075 (5th Cir.1971); nothing remains but to give judgment and sentence. Robinson v. State, 373 So.2d 898 (Fla. 1979).
A necessary corollary of the seriousness with which such pleas are entered is the requirement that the defendant enter his plea knowingly and voluntarily. Mendenhall v. Hopper, 453 F. Supp. 977 (S.D. Ga. 1978), aff'd, 591 F.2d 1342 (5th Cir.1979). It is therefore the lawyer's duty to ascertain that the defendant possesses sufficient awareness of the relevant circumstances and likely consequences. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Lamb v. Beto, 423 F.2d 85 (5th Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). To do so, of course, the attorney must familiarize himself with the facts and the law enough to advise the defendant meaningfully of his options. Bradbury.
Focusing on the level of competency required of counsel in advising his client to plead guilty, we proceed to the claims in the present case.

PROMISE OF NO JAIL TIME
We readily reject the defendant's first contention that he was incorrectly promised he would serve no jail time because we find that the plea colloquy unequivocally indicates that no such bargain was contemplated.[3]
His argument, that despite the plea colloquy he believed another agreement was struck, is equally unavailing on the record before us. The attorney testified at the evidentiary hearing that "there was no other deal struck or discussed or contemplated," and when asked whether there was any conversation with the client wherein the attorney indicated that if Reed did not have any felony convictions he would not receive jail time, the attorney responded in the negative.

FAILURE TO PREPARE A DEFENSE
The defendant's second contention in support of his 3.850 motion was that the attorney failed to adequately prepare for the case. This allegation, standing alone, would be insufficient to warrant an evidentiary hearing. See United States v. Crook, 607 F.2d 670 (5th Cir.1979); Matthews v. United States, 518 F.2d 1245 (7th Cir.1975). Accordingly, we will only review the more specific challenges to the attorney's preparation of the case  his failure to investigate the testimony of the sole eyewitness, his failure to inform the defendant of this witness and his failure to suppress the breathalyzer test. To properly consider these allegations, a summary of the evidence is essential.
Before advising his client to plead guilty, the attorney acquired information from several sources. The Florida Highway Patrol report contained a statement of the investigating officer in which he concluded, based on the physical evidence, that the decedent had exited his stalled vehicle and was standing between the vehicle and an attached trailer when the defendant's automobile collided with the rear of the victim's trailer. The impact hurled the decedent into the concrete median strip. The police *937 report also included an admission by the defendant that he had in fact been drinking prior to the accident. Further, the alcohol test unit report reflected that the defendant had a .23% blood alcohol level, his speech was slurred, his eyes were bloodshot, and he showed other positive signs of intoxication. The attorney reviewed the medical examiner's protocol and found it to indicate injuries consistent with the state's theory of prosecution and inconsistent with a reasonable theory of nonculpability.
As a final and significant source of information each attorney has his own client. United States v. Clayborne, 509 F.2d 473 (D.C. Cir.1974). As the court observed in United States v. Decoster, 624 F.2d 196, 210 (D.C. Cir.1979), "[r]ealistically, a defense attorney develops his case in large part from information supplied by his client."

FAILURE TO INVESTIGATE TESTIMONY OF WITNESS
Notwithstanding this evidence, the defendant argues that his counsel was ineffective for failing to investigate the testimony of an eyewitness, Mr. Woodberry. We disagree.
Woodberry's statement to the police at the time of the accident provided:
Approximately 12:00 midnite 09-10-80 (Wednesday) traveling North on I-95 at exit 7. I saw a U-Haul trailer & car stopped in 2 lane E. of divider. I looked & saw no one in car and immediately picked up my radio to call Miami TRBL office (FPL) to inform FHP on potential hazard. I looked in my mirror at same time & saw the cars & trailer spinning in the road. I returned to scene while calling for rescue squad when I got there some man came up & said, "I Think She's Dead." (Man left  Doubdt (sic) If I could identify him.) I check man on ground against divider & found he was alive and continued my message to FP & L.
There was nothing in this innocuous statement to indicate that the witness could provide exculpatory information. To the contrary, Woodberry's observations as recorded at the time of the accident were entirely consistent with the facts as found in the police report. Since the statement contained nothing which would have put the attorney on notice that he should investigate further, we hold that his failure to do so was not a substantial deficiency. Were we to decide otherwise, then attorneys, before advising their clients to plead guilty, would be required to interview all witnesses whose identities became known to them.
It is clear that less than the exhaustive and plenary investigation that would accompany a trial is required to enter a plea. Lee v. Hopper, 499 F.2d 456 (5th Cir.), cert. denied, 419 U.S. 1053, 95 S.Ct. 633, 42 L.Ed.2d 650 (1974); Lamb v. Beto. The court in Jones v. Henderson, 549 F.2d 995, 996 (5th Cir.1977) observed that "it is essential to recognize the difference between the duty of counsel to a defendant who enters a guilty plea and the duty to one who goes to trial." More specifically, in Walker v. Caldwell, 476 F.2d 213 (5th Cir.1973) it was stated that:
[W]e do not hold that every appointed counsel representing an accused who desires to plead guilty or whom he advises to plead guilty, must investigate all the facts of the case, explore all possible avenues of defense, etc., to the extent required of an appointed counsel representing an accused who pleads not guilty and goes to trial.
476 F.2d at 224.
The defendant attempts to buttress his argument that the attorney should have proceeded with further investigation by pointing to a statement taken subsequent to the plea being entered.[4] In this subsequent statement, Woodberry explained his exculpatory theory that the decedent was *938 killed by an unknown motorist in an accident prior to the one in which the defendant was involved. He reached this conclusion based on the fact that he carefully looked for people as he drove by the disabled vehicle but saw no one in or near the car.
This conclusion upon which the defendant now places great reliance was not part of the statement given to the police.[5] Nor, as we have previously observed, was this defense readily discernible from the mere statement that "I looked and saw no one in the car." On the information known to the attorney at the time the plea was entered, we hold that it was not a substantial and serious deficiency for the attorney to advise his client to plead guilty without further investigating a statement which on its face was consistent with the theory of the prosecution. See United States v. Decoster; Murray v. State, 384 F. Supp. 574 (S.D. Fla. 1974).

FAILURE TO INFORM THE DEFENDANT OF WITNESS
Since we have determined that the attorney adequately represented his client without investigating Woodberry's testimony, we fail to see how his failure to inform the defendant of that witness' non-exculpatory statement could have been a deficiency.

FAILURE TO SUPPRESS BREATHALYZER TEST
The defendant's final allegation of ineffectiveness pertains to the attorney's failure to move to suppress the breathalyzer test. In McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), the principal issue was whether one could collaterally attack a guilty plea on the basis that it had been motivated by a prior coerced confession. In effect, the defendant argued that the admissibility of his confession was mistakenly assessed and that since he was erroneously advised, his plea was unintelligently entered. The court rejected this argument stating:
In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.
McMann, 397 U.S. at 769-70, 90 S.Ct. at 1448. Beckham v. Wainwright, 639 F.2d 262 (5th Cir.1981); see also Rutledge v. Wainwright, 625 F.2d 1200 (5th Cir.1980), cert. denied, 450 U.S. 1033, 101 S.Ct. 1746, 68 L.Ed.2d 229 (1981).
That a guilty plea must be intelligently made is not a requirement that all advice by counsel withstand retrospective examination in a post-conviction hearing.
With the aid of hindsight, one can always second guess the tactical judgments made by counsel, but it by no means follows that constitutional rights were infringed.
Long v. Brewer, 667 F.2d 742, 744 (8th Cir.1982). See also McMann.
*939 Turning to the present case then, we need not, as appellant would urge us to do, determine whether the motion to suppress would have been granted. See McMann; compare Blatch v. State, 389 So.2d 669 (Fla. 3d DCA 1980) (after trial, defendant's claim that his counsel was ineffective for failing to suppress his confession turned on whether or not his confession would have been inadmissible). The attorney's decision not to press for suppression was not a substantial deficiency in his representation of his client in light of the incriminating evidence against the defendant contained in the Florida Highway Patrol report and the possible sentence which could have been imposed after trial. See Long; Gunn v. Kuhlman, 479 F. Supp. 338 (S.D.N.Y. 1979).

CONCLUSION
Having carefully considered all of the points raised by Reed, we affirm the trial court's denial of his motion for post-conviction relief.
NOTES
[1] Pursuant to Section 322.262, Florida Statutes (1979), a blood alcohol level exceeding .10% shall be prima facie evidence that the person was under the influence of alcohol.
[2] This condition was vacated as to work-related driving on August 13, 1981.
[3] The following portion of the plea colloquy supports our findings:

THE COURT: You heard what your attorney has had to say; that you have reached a decision in that the Court should determine the appropriate sentence in this case; with that understanding, in any event, you would be incarcerated for not longer than a period of three years.
Do you understand that, sir?
THE DEFENDANT: Yes.
THE COURT: In all likelihood, the Court will, as a portion of your sentence, order that you serve a period of probation.
In the event that you violate the terms and conditions of that probation, in that event, you can be brought back before the Court and sentenced to up to 
MR. RABIN: Fifteen.
THE COURT:  fifteen years in the State Penitentiary.
Do you understand that, sir?
THE DEFENDANT: Yes, sir.
THE COURT: Has anybody promised you anything or threatened you in any way to tender this plea?
THE DEFENDANT: No, sir.
[4] Woodberry gave a voluntary statement after sentencing and testified at the evidentiary hearing on Reed's 3.850 motion.
[5] At the hearing on the motion for post-conviction relief, Woodberry testified that on the night of the accident he gave the officer a handwritten copy of his statement which was substantially the same as the statement given by him subsequent to sentencing. The trial court by its denial of the 3.850 motion implicitly rejected Woodberry's testimony on this point. Additionally, the only copy signed in the police report was the typewritten version which has been included in this opinion. As we have stated, that version did not indicate that the witness could provide exculpatory information.