No. 83-157

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

KARL ERIC GRATZER,

Defendant and Appellant.

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael J. Sherwood, (argued) & Karl Englund
Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert McCarthy, County Attorney, Butte, Montana
Patrick Fleming and Ross Richardson, Deputy County
Attorneys, (argued) Butte, Montana

Submitted: December 8, 1983

Decided: April 24, 1984

Filed: APR 1984

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Karl Eric Gratzer appeals from his conviction of deliberate homicide in the District Court, Second Judicial District, Silver Bow County. He was charged in the shooting death of Tim Hull on April 14, 1982, which occurred in a parking lot near a dormitory of the Montana College of Mineral Science and Technology (Montana Tech).

Gratzer, born in Butte, the last of eight children, lived with his mother and stepfather. For most of the time between 1979 and the date of the shooting, he was engaged in an intense personal relationship with a young woman we identify as P.L. It appears that he and P.L. were almost inseparable from their late high school years until 1981-1982, when P.L. was enrolled as a student at Montana Tech. Gratzer enrolled there in January of 1982.

From December of 1981, however, it appears that the relationship between the two was deteriorating, or at least that P.L. was also attracted to Tim Hull. Gratzer suspected that more was going on between P.L. and Tim Hull than he was being told by P.L., and his suspicions were confirmed on occasions when he discovered the two together at her house or in other locations.

On the night of April 14, 1982, he found P.L.'s vehicle in the parking lot near the dorm (she resided in her own home in Butte). He was observed letting the air out of two tires on her vehicle. His purpose was to find out whom she was visiting in the dorm. He was chased by the two persons who saw him letting the air out of the tires. He made a hasty retreat to his car and made good his escape.

Gratzer, however, came back to the parking lot in another car, this time taking with him a .357 magnum pistol. From a vantage point where he had parked his car, he observed P.L. come out of the dormitory, brush some snow off of her vehicle and discover the flat tires. She went back into the dormitory. He got out of his car and made his way to a spot between some pine trees located at the west end of the parking lot. He was observed in his hiding place by the occupants of a house nearby. A short time later P.L. and Tim Hull came out of the Montana Tech dormitory hand-in-hand. They walked toward P.L.'s car. When they approached the pine trees at the west end of the parking lot, Gratzer stepped out of his hiding place and a confrontation ensued. Gratzer had his gun in his hand, and Hull struggled with him before breaking free and attempting to flee. While Hull was retreating, Gratzer fired his pistol twice at the fleeing man. One of the two shots struck Hull in the back of the left leg, shattering his femur bone so that he was incapacitated. Gratzer then walked over to where Hull was lying and fired two more shots from his pistol at point blank range. These bullets struck Tim Hull in the left side of his head causing his instantaneous death.

Gratzer then walked back to his vehicle and went to his home. There he informed his mother that he thought he had shot someone. Following that he drove to the police station where he turned himself, his gun, and his car keys over to the police.

Gratzer was charged in District Court with aggravated assault and deliberate homicide. The District Court ordered that he be examined at Warm Springs State Hospital for an evaluation in order to determine whether he was fit for the

criminal proceedings. His attorney filed a notice of purpose to rely on mental disease or defect. The District Court then ordered a psychiatric examination be conducted by Dr. William D. Stratford. The District Court also, at the request of the State, required that the defendant be examined by personnel at Warm Springs State Hospital as to the mental state of the defendant on the night in question.

The psychiatrists for the defense and the prosecution testified at the trial. Each testified that Gratzer was under mental stress during the night of the shooting. Dr. Xanthopoulos felt that the mental stress was not so extreme as to invoke the statutory language of mitigated deliberate homicide. Dr. Stratford felt the stress was extreme.

The jury returned a verdict of not guilty on aggravated assault and guilty of deliberate homicide. He was sentenced by the District Court to life imprisonment, labeled a dangerous offender for purposes of parole, and declared to be ineligible for parole, and further sentenced to ten years for the use of a firearm in the commission of the offense. His appeal is now before us.

I.

The first and principle issue raised by Gratzer is that the District Court committed instructional error with respect to mitigated deliberate homicide in refusing to give two instructions offered by Gratzer. Gratzer contends that the District Court improperly instructed the jury with respect to burden of proof relating to mitigated deliberate homicide. He argues that the State has a duty to prove beyond a reasonable doubt as an element of mitigated deliberate homicide that Gratzer was not acting under the influence of extreme mental or emotional stress.

- 4 -

The State contends that Gratzer was not entitled to any instructions on mitigated deliberate homicide under the facts in this case but that, in any event, under court's Instruction No. 10A, no instructional error occurred.

With the adoption of the new Montana Criminal Code of 1973, our state legislature divided criminal homicide into three types, deliberate, mitigated deliberate, and negligent. Section 45-5-101, MCA.

Criminal homicide is deliberate if it is committed purposely or knowingly. Section 45-5-102, MCA. It is mitigated deliberate homicide if what would otherwise be deliberate homicide is "committed under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse." Section 45-5-103, MCA.

We are called upon by the parties in this case to determine who has the burden and what is the burden of proof to establish the influence of extreme mental or emotional stress in a mitigated deliberate homicide case.

The District Court determined not to fix the burden of proof on either party, and instead instructed the jury with respect to mitigated deliberate homicide as follows:

> "In order to find the Defendant Guilty of the lesser offense of mitigated deliberate homicide, the State must prove the following propositions:
>
> "First, that the defendant performed the acts causing the death of Tim Hull, and
>
> "Second, that when the Defendant did so, he acted purposely or knowingly;
>
> "Additionally, you must find that at the time the Defendant killed Timothy Hull, he was acting under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a reasonable person in the Defendant's situation.

"If you find from your consideration of all the evidence that each of the first two propositions has been proved beyond a reasonable doubt by the State and that the Defendant, at the time he killed Timothy Hull, was acting under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse, then you should find the Defendant Guilty of the lesser offense of Mitigated Deliberate Homicide.

"However, if you find that the Defendant was not acting under the influence of extreme mental or emotional stress for which there is a reasonable explanation or excuse, then you should find the Defendant Guilty of Deliberate Homicide.

"If you find from your consideration of all the evidence that either of the first two propositions has not been proven by the State beyond a reasonable doubt, then you must find the Defendant Not Guilty of Deliberate Homicide."

Before considering the propriety of the foregoing instruction, we must first treat the contention of the State that the court should not have instructed the jury in this case on mitigated deliberate homicide. It is the State's contention that the facts of this case indicate nothing but deliberate homicide and there was no showing of mitigation.

Mitigated deliberate homicide is a lesser-included offense of deliberate homicide. State v. Bashor (Mont. 1980), 614 P.2d 470, 487, 37 St.Rep. 1098, 1118; State v. Baugh (1977), 174 Mont. 456, 459-60, 571 P.2d 779, 781. The District Court therefore had a duty to instruct the jury on mitigated deliberate homicide if there was evidence to justify the submission of the lesser crime. In this case the testimony of Dr. Stratford to the effect that Gratzer was acting under extreme mental or emotional stress created a fact issue which was sufficient to require the District Court to submit the lesser crime to the jury for its consideration.

- 6 -

The State also contends that Stratford's evidence was incredible, but of course the weight of the evidence is for the jury.

It is the duty of the State in a criminal prosecution to prove beyond a reasonable doubt every element of the crime charged. Does this mean therefore that the influence of mental or emotional stress is an element that the State must prove in order to sustain a conviction of mitigated deliberate homicide as a lesser-included crime? We hold not. Under the statutory scheme defining homicide in the Montana Criminal Code of 1973, all purposely and knowingly committed homicides are deliberate unless committed under the influence of extreme mental or emotional stress. In defining the offense of mitigated deliberate homicide, the legislature did not create an additional element for the State to prove relating to mental or emotional stress. It simply stated the kind of mitigation that would reduce a deliberate homicide to a mitigated deliberate homicide.

The opposite situation was true under the statutes defining first and second degree murder that preceded the 1973 Criminal Code. Under former law, section 94-2503, R.C.M. 1947, defined first degree murder as any kind of willful, deliberate, or premeditated killing, or one which was committed in perpetration of a crime. The same section provided that all other kinds of murder were of the second degree. In interpreting the former statute, this Court decided that when proof of the homicide by a defendant had been made by the State, the crime was presumed to be murder in "the second degree." State v. Chavez (1929), 85 Mont. 544, 281 P. 352; State v. Kuum (1919), 55 Mont. 436, 178 P. 288; State v. Fisher (1900), 23 Mont. 540, 59 P. 919. But

- 7 -

the burden was then upon the State to introduce evidence satisfying the jury beyond a reasonable doubt that there was deliberation and premeditation in order to raise the crime to murder in the first degree. State v. LeDuc (1931), 89 Mont. 545, 300 P. 919.

The effect of the adoption of the 1973 Criminal Code in Montana was to change radically our legal concepts for proof of homicide. Formerly, the presumption on proof of a killing was that the lesser crime had been committed, and the State had the duty of going forward with the evidence beyond a reasonable doubt that the greater had been committed. Now the legal effect of proof of a killing is that the greater crime has been committed, that of deliberate homicide, unless the evidence shows mitigation, excuse or justification. We are fortified in this conclusion by section 45-5-112, MCA, which provides:

> "Inference of mental state. In a deliberate homicide, knowledge or purpose may be inferred from the fact that the accused committed a homicide and no circumstances of mitigation, excuse, or justification appear."

We do not construe, as does Gratzer, section 45-5-112, supra, to require the State in a deliberate homicide case to negate mitigation beyond a reasonable doubt before the jury may infer purpose or knowledge. Section 45-5-112, MCA, imposes no greater burdens upon the State than which fall upon it under section 45-5-102, MCA, the statute defining the elements of deliberate homicide. We regard section 45-5-112 as a statute simply providing for a legal inference by the jury in a deliberate homicide case when no circumstances of mitigation, excuse or justification appear. That is the plain language of the statute and we engraft upon it no

burden for either party in a homicide case, since the statute itself is silent.

This leads us to the consideration whether we should impose upon the defendant in a deliberate homicide charge, absent a specific direction by statute, the burden of proving mitigation so as to reduce the charge to mitigated deliberate homicide. The state attorney general and the county attorney are divided on this point, and understandably so. The answer revolves around whether the mitigation required to reduce deliberate homicide to mitigated deliberate homicide is an affirmative defense.

If such mitigation is an affirmative defense, then it is within the power of the State to allocate the burden of proof to the defendant by a preponderance of the evidence, or perhaps by a lesser burden. Patterson v. New York (1977), 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281; State v. Sorenson (Mont. 1980), 619 P.2d 1185, 37 St.Rep. 1834. The State is "not required to prove the nonexistence of every fact which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment." Sorenson, 619 P.2d at 1189, 37 St.Rep. at 1838.

Particular affirmative defenses in criminal proceedings recognized by our statutes are contained in section 46-15-301(2)(a) including "justifiable use of force (formerly self-defense), entrapment, compulsion, alibi or the defense that the defendant did not have a particular state of mind that is an essential element of the offense charged." A defendant intending to raise one of those enumerated defenses must give notice to the prosecutor to prevent surprise under

section 46-15-301. Mitigation is not listed in any statute as an affirmative defense.

We hold that mitigation sufficient to reduce deliberate homicide to mitigated deliberate homicide is not of itself an affirmative defense, which would require the burden of proof to be placed upon the defendant. There are two principle reasons to so hold. First, the affirmative defenses listed in section 46-15-301, MCA, constitute complete defenses to the crimes charged. If the defendant proves an affirmative defense he is entitled to an acquittal. This is not true in the case of mitigation reducing a deliberate homicide charge to a mitigated deliberate homicide. Mitigation simply involves reducing the deliberate homicide charge to a lesser-included crime.

Second, the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse, which reduces a deliberate homicide to a mitigated deliberate homicide may not be classified as an affirmative defense under the definition in section 46-15-301(2)(a), MCA, "a particular state of mind that is an essential element of the offense charged." If it were an essential element of the offense charged, it would be the duty of the State to prove such mitigation. In Re Winship (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375. We have already stated that mitigating circumstances are not an element which the State has to prove. Therefore extreme mental or emotional stress which constitutes mitigation does not fall within the definition of section 46-15-301(2)(a), setting out affirmative defenses.

We therefore hold that since the mitigating circumstances which reduce deliberate homicide to mitigated

deliberate homicide are not an element of the reduced crime which the State must prove, nor an affirmative defense which the defendant must prove, neither party has the burden of proof as to such mitigating circumstances, although either party may assume such burden.

This undoubtedly was the view of the District Court when it promulgated its Instruction No. 10A, which we have set forth in full above. A careful reading of the instruction will disclose that the District Court placed no burden on either party for proof of mitigating circumstances, leaving it to the jury to examine the evidence and, if mitigating circumstances appeared in a killing purposely and knowingly committed by the defendant, the jury could then find the defendant guilty of mitigated deliberate homicide. We therefore determine that the jury was properly instructed as to the elements of the lesser-included crime, mitigated deliberate homicide, contrary to Gratzer's contentions here.

In this connection, Gratzer argues that the District Court should have instructed the jury with two of Gratzer's proposed instructions. One of the instructions, No. 20, would have instructed the jury that the State must prove beyond a reasonable doubt that to sustain the charge of deliberate homicide, the defendant was not acting under the influence of extreme mental or emotional stress. The State is under no duty, as we have said, to negate the influence of extreme mental or emotional stress in order to prove deliberate homicide. The State need prove beyond a reasonable doubt, only the elements of the crime required under section 45-5-102, MCA, which defines deliberate homicide.

The second instruction, No. 18, contained the following
language:

". . .

"Additionally, you must find that there is evidence
presented by the Defendant to raise a reasonable
doubt as to whether the State has proven that he
was not acting under the influence of extreme
mental or emotional stress for which there is
reasonable explanation or excuse. The
reasonableness of such explanation or excuse shall
be determined from the viewpoint of a reasonable
person in the defendant's situation.

". . ."

The clarity of the offered instruction is dubious, and was
really only another way of saying that the State was required
to negate the absence of severe mental or emotional stress.
The District Court properly refused the two offered
instructions.

Gratzer also contends that he was entitled to
Instruction No. 18 under the holding of this Court in State
v. Crean (1911), 43 Mont. 47, 114 P. 603. In Crean, the jury
was instructed by the court that the defendant had the burden
of proving mitigation, justification, or excuse upon a charge
of murder. The jury was further instructed in Crean that the
amount of evidence necessary to be introduced by the
defendant to support mitigation, excuse or justification must
be at least sufficient to create in the minds of the jury,
upon a consideration of all the evidence in the case, a
reasonable doubt. Crean, however, has no application to this
case. Former section 9282, R.C.M. 1947, now repealed, placed
the burden of proving circumstances of mitigation upon the
defendant. In Crean, the defense of the defendant was
justification for the killing. This Court held that the
quantum of proof imposed upon the defendant to support

- 12 -

justification "was such only as upon the whole case made would raise a reasonable doubt of his guilt." Crean, 43 Mont. at 55, 114 P. at 606. The effect of the holding in Crean was that if a defendant's proof of justification raised a reasonable doubt in his guilt to the charge of murder, he was entitled to an acquittal. Gratzer's offered Instruction No. 18 did not comprehend the holding in Crean, and would have misdirected the jury. In Crean, if the defendant's proof of justification raised a reasonable doubt as to his guilt, he was entitled to an acquittal; in this case, if Gratzer's actions in committing the killing were the result of his extreme mental or emotional stress for which there was reasonable excuse, he would not be entitled to an acquittal, but to a conviction on the reduced charge of mitigated deliberate homicide. Crean, therefore, does not support Gratzer's contention that he was entitled to the instructions proffered.

## II.

Another issue raised by Gratzer is that two photographs were improperly introduced and received in evidence by the court and that bullets were introduced into ·evidence improperly.

Gratzer contends that the photographs, which depicted a bloody pool and blood splashed upon a parked automobile were prejudical to him, and that only one of the prosecution's witnesses made a passing reference to the photographs.

Photographs are admissible if they fairly and accurately represent relevant evidence. State v. Austad (Mont. 1982), 641 P.2d 1373, 1380, 39 St.Rep. 356, 362. Pictures of the crime scene are admissible, if in the determination of the

court, they aid the jury in its fact-finding process. State v. Woods (Mont. 1983), 662 P.2d 579, 40 St.Rep. 533.

Gratzer also contends that the chain of control of the bullets was not established in this case so as to comply with the rule of State v. Close (Mont. 1981), 623 P.2d 940, 38 St.Rep. 177, that the State must identify the particular exhibit as relevant to the criminal charge and must show prima facie that no alternation or tampering with the exhibit has occurred.

We held in State v. Wells (Mont. 1983), 658 P.2d 381, 40 St.Rep. 127, that the State need only make a prima facie showing that there has been no substantial change in the evidence, and that after such a showing the burden of proof shifts to the defendant to show why the evidence should not be admitted. Here, the evidence indicates that the bullets were forwarded to the state crime laboratory in a sealed container, and were received in the state crime laboratory with the container still sealed. The chain of control is complete, and there is no evidence of possible tampering here.

We therefore hold that the photographs and bullets were properly admitted.

### III.

Gratzer further contends that it was improper for the county attorney, on examination of the psychiatrist who testified, to bring out that they had been appointed by the court to examine the defendant. Gratzer's counsel made timely objection to the questions.

Section 46-14-213, MCA, provides that the jury may not be informed that the psychiatrist was designated by the court to examine the defendant. The county attorney's questions

- 14 -

directly violated that statute, and the objections of the defense counsel should have been sustained.

It does appear, however, that when the defense psychiatrist was being examined before the State produced its psychiatrist, he, perhaps inadvertently, mentioned in two or three instances that he was acting under a court order. The State now contends since the purpose of section 46-14-213, MCA, is to avoid the impression that a court-appointed psychiatrist has been clothed with the "badge of truth," it was proper for the District Court to allow the answers by the State's psychiatrist in order to equalize the positions of the psychiatrists in the mind of the jury.

We do not condone the propounding of questions in violation of statutes, especially when beforehand the District Court had not been alerted to the purpose, but in this case we hold the allowance of answers to such questions to be harmless error.

IV.

Our conclusion is that the conviction of the defendant of deliberate homicide should be affirmed.

_____
                                Justice

We Concur:

_____
        Chief Justice

_____



- 15 -

_L. C. Gulbrandson_

_____

_____
Justices

Mr. Justice Frank B. Morrison, Jr. respectfully dissents as follows:

The single issue at trial regarding the charge against Karl Gratzer was whether he should be convicted of deliberate homicide or mitigated deliberate homicide. Deliberate homicide is causing the death of another while acting with purpose or knowledge unless the defendant so acts while under the influence of extreme mental or emotional stress. If defendant acted purposefully or knowingly, but while under severe mental or emotional stress, then defendant is guilty of mitigated deliberate homicide rather than deliberate homicide.

The burden of proving that defendant acted purposely and knowingly is on the State and the State must prove this mental state beyond a reasonable doubt. The question here is who has the burden of proving the existence or absence of severe mental or emotional stress.

The majority opinion finds that neither party has the burden of proof but the jury just makes a determination with no legal standards. This, of course, is impossible. If the jury finds the evidence presented by the prosecution and by the defense to be evenly balanced, then who would prevail?

The law in Montana is clear and has been since the Supreme Court of Montana decided State v. Crean, 43 Mont. 47, 114 P. 603 (1911). In the Crean case, the trial court instructed the jury as follows:

> "As to the amount of evidence necessary to be introduced by the defendant so as in law to mitigate, excuse, or justify the homicide, you are instructed it must be at least sufficient to create in the minds of the jury, upon a consideration of all of the evidence in the case, a reasonable doubt."

The above instruction was affirmed by the Supreme Court. 114 P. at 606.

17

Under the law, the defendant has the burden of coming forward with evidence of severe mental or emotional stress sufficient to raise a reasonable doubt. Thereafter, the State has the burden of proving beyond a reasonable doubt that defendant acted absent severe mental or emotional stress. If the State fails in its burden to exclude severe mental or emotional stress, but succeeds in proving purpose or knowledge causing death, then the jury must convict of mitigated deliberate homicide rather than deliberate homicide.

The trial court in this case failed to properly instruct the jury. The trial court simply set forth the statutory definition of mitigated deliberate homicide without instructing the jury about the burden of proof. The jury was left to speculate. Defendant, in this case, introduced psychiatric testimony supporting the defense position that defendant operated under severe mental or emotional stress. In weighing this evidence the jury must necessarily have had an instruction with respect to burden of proof. The evidence, as a matter of law, was sufficient to raise a reasonable doubt and the State had to exclude mitigation beyond a reasonable doubt.

The majority opinion which relieves the State of its burden, and in effect, leaves the jury with no legal standard whatever, violates the defendant's due process rights. The error is so apparent that a review by a federal court will surely result in reversal.

_____
Justice

Mr. Justice Daniel J. Shea:

I concur in the foregoing dissent of Mr. Justice Morrison.

_____
Justice