No. 84-88

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

WAYNE LESLIE KOEPPLIN,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Jefferson,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Nicholas C. Jacques, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
John P. Connor, Jr., County Attorney, Boulder,
Montana

---

Submitted on Briefs: August 31, 1984

Decided: October 22, 1984

Filed: UCT 1984

*Ethel M. Harrison*
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Wayne Leslie Koepplin appeals the judgment of the Jefferson County District Court finding him guilty of mitigated deliberate homicide. The appellant Koepplin raises the issue of whether the District Court erred in denying his motion to withdraw his plea of guilty. We find no error and affirm.

At the time of the homicide, Koepplin and the victim, Jackie Lynn Koepplin, were recently divorced and living apart. Shortly after midnight on January 20, 1982, appellant Koepplin followed his former wife to her home after she got off work. Koepplin was intoxicated and witnesses felt he was in a belligerent mood. An argument between the couple ensued and Koepplin struck Jackie in the head numerous times. There were no witnesses to this beating. Jackie collapsed unconscious and Koepplin called an ambulance when she failed to regain consciousness. Koepplin later stated that Jackie struck her head against a wall when she lost consciousness. The victim never recovered from her comatose condition and died of her injuries nine days later in a Butte hospital.

An autopsy was performed by the State Medical Examiner and a resident pathologist at the hospital. Their conclusion was that Jackie Koepplin suffered from seven distinct areas of trauma to the brain and died of multiple blunt force injuries to the head. No one of the traumatic injuries alone could have caused her death.

Koepplin admitted to an undersheriff the day following the incident that he had struck Jackie a number of times. At the scene Koepplin told an officer he had struck her six to eight times.

2

The County Attorney for Jefferson County originally charged Koepplin with deliberate homicide. Allen LeMieux was appointed to represent Koepplin, a plea of not guilty was entered and a trial date set. The defendant received a psychological evaluation that indicated he was of average intelligence, with no evidence of psychotic or neurotic condition and was competent to stand trial. At the request of the defendant, several continuances of the trial date followed within the next nine months. LeMieux moved to withdraw as counsel due to a conflict with Koepplin and David Hull was appointed to represent the defendant in September 1982.

On February 14, 1983, pursuant to a plea bargain agreement, the County Attorney filed an amended information charging mitigated deliberate homicide, and Koepplin plead guilty to the lesser charge. No recommendations concerning sentencing were included in the plea bargain agreement.

Following a presentence investigation and hearing, Judge Davis sentenced Koepplin to forty years in the state prison and designated him a dangerous offender for purposes of parole.

A motion was made to vacate the sentence on the grounds that the district judge had become involved in the presentence investigation. By stipulation of the parties, the sentence was vacated and Judge Henry Loble assumed jurisdiction. At this time, on November 3, 1983, Koepplin moved to withdraw his plea of guilty. He charged that his attorney Hull had not adequately advised him of the nature of the charge and that neither Hull nor the court had explained the elements of negligent homicide to him. Koepplin also alleged that he had been assured by his attorney he would receive a

3

light sentence. Thereafter the District Court accepted Hull's request to be removed as counsel and appointed Nicholas Jacques to represent Koepplin.

An evidentiary hearing was held and on December 9, 1983, the court denied Koepplin's motion to withdraw the guilty plea. On December 13, 1983, Judge Loble sentenced Koepplin to forty years in prison and also designated him dangerous for purposes of parole.

Our review is guided by the principles enunciated in State v. Huttinger (1979), 182 Mont. 50, 595 P.2d 363. There we stated that three factors should be balanced when considering a criminal defendant's attempt to withdraw a previously entered guilty plea. These factors are:

1. The adequacy of the District Court's interrogation as to the defendant's understanding of his plea;

2. The promptness of the motion to withdraw the prior plea; and

3. The fact that the defendant's plea was apparently the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge.

There is no set standard that a trial court can apply when handling motions to withdraw a plea. The court's decision is subject to review only upon an abuse of discretion. In Matter of Brown (1980), 185 Mont. 200, 605 P.2d 185.

The thrust of appellant's argument is that he was not adequately advised of the charge to which he plead guilty and that he should have been apprised of the elements of negligent homicide.

At the outset we note that when Koepplin's guilty plea was entered, he affirmed to the court that he had been given

4

a copy of the amended information, had read it, and discussed the nature of the crime with his attorney David Hull.

The clinical psychologist who examined Koepplin found him to be of average intelligence with a verbal I.Q. of 102, a performance I.Q. of 103, and a full scale I.Q. of 103. Thus, this factual situation is distinguishable from that in which the United States Supreme Court found error of a constitutional dimension in Henderson v. Morgan (1976), 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108. In Henderson a plea was found to be involuntary where the defendant was substantially below average in intelligence and was never informed by the trial court or counsel that intent was an element of the crime of second-degree murder to which he plead guilty. The requisite mental state of the crime to which Koepplin plead guilty is "purposely or knowingly." See, section 45-5-102, and section 45-5-103, MCA. The amended information that Koepplin received and read in this case informs anyone of average intelligence of the necessary mental state:

> "The above-named defendant purposely or knowingly caused the death of Jackie Lynn Koepplin on January 29, 1982, by striking her on the head and face on or about January 20, 1982, but did so while under the influence of extreme mental or emotional stress for which there was reasonable explanation or excuse."

Koepplin stated to the court that he felt he was not guilty of the charge but believed the State could prove him guilty. The court interrogated Koepplin, advised him of the rights he was waiving and made sure he understood there was no leniency promised by the plea bargain.

Following the entering of the plea, the County Attorney gave a recital of the proof the State would have presented at trial. This proof, summarized above, presents strong

5

evidence that the homicide was deliberate and not negligent under the terms of the statutes.

"Knowingly" causing another person's death in our criminal code is defined as being aware that it is highly probable that such a result will be caused by the conduct. Section 45-2-101(33), MCA. Koepplin's contentions to the contrary, his acts meet the statutory requirements of mitigated deliberate homicide. The trial court had a solid basis to conclude that when Koepplin struck the victim he was aware of the high probability of causing her death.

Accepting Koepplin's contentions that he did not intend to kill Jackie, his acts still meet the statutory requirements of mitigated deliberate homicide. Where "purposely or knowingly" causing a result is an element of an offense, that element can be established if the result involves the same kind of harm or injury as contemplated by the defendant, although the actual degree of injury is greater than intended. See section 45-2-201(2)(b), MCA. Koepplin by his own admissions intended to slap the victim numerous times about the head. The result, death by brain damage, may not have been intended. However, the result that did occur is a more severe form of the same kind of injury that was intended--injury to the head area of the victim. In these instances our deliberate homicide statutes and case law state that the actor may be held accountable for the unintended death, if a causal relationship is established pursuant to section 45-2-201, MCA. See State v. Sigler (Mont. 1984), ___ P.2d ___, 41 St.Rep. 1039. As Judge Loble noted in his order, a person cannot strike lethal blows and then avoid the consequences of his actions by saying he was surprised his victim died or that he did not intend to kill her.

6

Analogous issues have arisen when appellants have argued error in a trial court's failure to instruct on a lesser included offense. For example, in State v. Sotelo (Mont. 1984), 679 P.2d 779, 41 St.Rep. 568, we found a failure to instruct on negligent homicide reversible error. This holding was based on the fact that there was evidence in the record to support the instruction. Sotelo had been in a fight with the decedent and could have kicked the victim in an attempt to free his leg. There was also uncertainty as to the exact cause of the victim's death.

Similarly, in State v. Azure (1977), 175 Mont. 189, 573 P.2d 179, we reversed a deliberate homicide conviction that was based on the defendant's guilty plea. Acceptance of the plea was error where the court failed to advise the defendant of the elements of the lesser charge of mitigated deliberate homicide and there was the potential for evidence to be submitted showing intoxication. We noted in Azure that it is of vital importance that the defendant have a full understanding of the precise form of homicide to which he pleads.

In each of the foregoing cases there was evidence that supported the lesser charge. Here, there is nothing other than Koepplin's bare assertion that Jackie Koepplin's death was negligently caused. In this respect our review is most similar to that undertaken in State v. Hamilton (1981), 185 Mont. 522, 605 P.2d 1121. In Hamilton the defendant strangled his mother and alleged as error the court's failure to instruct on negligent homicide as a lesser included offense. The trial judge stated that this defense was beyond his wildest imagination and refused the instruction. This Court agreed saying, ". . . [we] cannot conceive how this death occurred as a result of negligence. We find no evidence in

7

the record upon which an instruction of negligent homicide could be based. . . ." 605 P.2d at 1129.

In _Azure_ we stated the general rule that a trial court only has to instruct on lesser offenses to which the evidence is applicable and the jury would be warranted in finding the accused guilty. Here, given the evidence, no jury could rationally believe Koepplin was guilty of the lesser offense and innocent of the greater. See State v. Jackson (1979), 181 Mont. 257, 589 P.2d 1009. Koepplin's admission to having hit the victim six to eight times combined with the autopsy report showing death by multiple blunt force injuries to the head precludes any notion that this crime involved an ordinary slapping or beating. Koepplin made a brutal attack on his former wife which cannot be equated with negligent homicide by any stretch of the imagination.

In accordance with our admonitions in _Azure_, the appellant was fully advised by the court of the form of homicide to which he plead guilty. The facts of the crime fit the charge made in the amended information. A trial court has no obligation when receiving a plea to advise the defendant of crimes that do not fit the facts presented.

Appellant argues tangentially that his attorneys failed to apprise him of the underlying statutory definitions of purposely or knowingly. Additionally, he contends that there was evidence in the record that would have supported an instruction on negligent homicide had he proceeded to trial. To the extent that these allegations concern questions of ineffective assistance of counsel, we note that the parties have neither raised nor briefed this issue.

Koepplin's attorney David Hull testified that he considered the lesser offense of negligent homicide such a

minimal option for the defendant that he did not pursue the defense. Hull also concluded that Koepplin's admitted intoxication the night of the homicide would not further his defense given the defendant's prior admissions of intentionally slapping the victim.

Here, where the outlook for acquittal or conviction on the lesser offense of negligent homicide was so improbable, we conclude that the defendant's alleged lack of counseling on the lesser offense did not render his guilty plea involuntary. A plea may be involuntary because the accused does not understand the nature of the charge against him. Smith v. O'Grady (1941), 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859. We find the reasoning of the United States Circuit Court of Appeals for the District of Columbia persuasive:

> "It may be argued that a plea of guilty is not understandingly made when defendant is unaware of certain technical defenses which might very well make the prosecutor's job more difficult or even impossible were he put to his proof. However, we think 'understandingly' refers merely to the meaning of the charge, and what acts amount to being guilty of the charge, and the consequences of pleading guilty thereto. . . ." Edwards v. United States (D.C. Cir. 1958), 256 F.2d 707, 710, cert. denied, 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed.2d 82. (Emphasis in original.)

Edwards has been cited with approval in several federal and state court decisions that are analogous to our decision today. See for example, Lee v. Hopper (5th Cir. 1974), 499 F.2d 456; Larson v. State (Alaska 1980), 614 P.2d 776; Reed v. State (Fla. App. 3 Dist. 1984), 447 So.2d 933. Cf., State v. Norman (1978), 118 Ariz. 23, 574 P.2d 491.

If there was any doubt that the plea was not voluntarily or intelligently made, the doubt would be resolved in defendant's favor. State ex rel. Gladue v. Eighth Jud. Dist.

(1978), 175 Mont. 509, 575 P.2d 65. In the present case the appellant has failed to raise such doubt.

Considering the second and third Huttinger factors described above, it is apparent that Koepplin wanted to withdraw his plea solely because he was dissatisfied with the sentence he received. We will not lend our assistance to an accused criminal in escaping the obligations of his plea agreement after he has received its benefits. State v. Arbgast (Mont. 1983), 656 P.2d 828, 40 St.Rep. 45. By way of the plea agreement, Koepplin avoided the consequences of a deliberate homicide conviction and possible imprisonment of 100 years.

The record supports the District Court's conclusion that Koepplin made a voluntary and intelligent plea of guilty to mitigated deliberate homicide. The court acted well within the limits of its discretion on the motion to withdraw the plea. The judgment is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

10