No. 86-291

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

TIMOTHY W. BALLENGER,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James P. O'Brien argued, Missoula, Montana

For Respondent:

Mike Greely, Attorney General, Helena, Montana
Patrick Driscoll argued, Asst. Atty. General, Helena
Robert L. Deschamps, III, County Attorney, Missoula,
Montana; Karen Townsend argued, Deputy County Attorney

Submitted: April 10, 1987

Decided: June 30, 1987

Filed: JUN 3 0 1987

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Timothy Ballenger appeals his conviction in Missoula County District Court for the deliberate homicide of his three-year old stepson, for which he received a 100 year prison term and a dangerous offender designation. Four issues are presented on appeal:

(1) Whether the District Court erred by refusing to instruct the jury on the lesser included offenses of aggravated assault and felony assault?

(2) Whether the District Court erred by refusing defendant's instructions on the necessary mental state for conviction of deliberate homicide?

(3) Whether the State must prove the absence of extreme mental or emotional stress beyond a reasonable doubt in a trial for deliberate homicide, once evidence of the stress has been introduced at trial by the defendant?

(4) Whether the District Court erred by refusing defendant's instruction for antisocial conduct? We affirm.

On March 1, 1985, Pamela Ballenger brought her three year old son, Beau Mitchell Stanley, to a hospital in Missoula, Montana. The child was comatose, whimpering, exhibited breathing difficulty and had numerous bruises and abrasions on his body. The attending doctor, Dr. Wise, noted that the child appeared to be near death and did not respond to stimuli as expected. Two specialists, Drs. Gary and Snellman, were called in for consultation. Dr. Wise concluded that the child had lost nearly one-fifth of his blood supply through internal bleeding and expressed concern about fresh bruises on the child's forehead and feet. The child was transferred to the intensive pediatric care unit of another Missoula hospital. As the physicians were attempting

to alleviate the pressure in the cranial area, the child died.

An autopsy revealed that the cause of death was shock and hemorrhage due to multiple blunt injuries. The medical examiner found that injuries to the trunk, feet, and legs were consistent with those inflicted by a belt and a bungi cord. The shoulder injuries were attributed to the use of a hairbrush on the child. The autopsy revealed over 140 separate injuries to the child. The hospital notified law enforcement officers subsequent to the child's admittance. The responding officer spoke with the mother who explained that the child had been at home all day with her husband, the defendant. Upon her return from work, she heard the child experiencing breathing difficulty. She explained that she argued with the defendant, who then left the residence. The officer became suspicious, asked for identification, and followed the mother to her car where the defendant was discovered lying face down in the back seat. The officer arrested both the mother and the defendant. The mother subsequently changed her version of events. She said that when she returned from work, the defendant told her he had spanked the child for misbehaving. The mother found the child gasping for breath and told the defendant that they had to go to the hospital. Defendant replied that the child was faking it and that he, the defendant, would be arrested if they went to the hospital. On the way to the hospital, defendant apparently told the mother to tell those inquiring that they had had a fight and that he had left the residence.

A statement was taken from the defendant who admitted beating the child for not eating his breakfast. The defendant said he hit the child with a belt, bungi cord, and his fists every 5-10 minutes over a four hour period. A

search warrant was executed and a belt, bungi cord, and hairbrush were recovered from the residence.

At trial, the jury heard extensive medical testimony about the injuries sustained and defendant's mental condition, and viewed photographs of the child. Five mental health professionals testified at trial as to defendant's ability to act purposely or knowingly toward the deceased child. Defendant's psychologist testified as to his diagnosis of organic brain syndrome but offered no opinion as to defendant's ability to act purposely or knowingly on the date of the incident. Dr. Hoell, a psychiatrist, testified that the defendant knew he was inflicting punishment on the child but because he was suffering from an organic personality syndrome, he did not realize the severity of the punishment. Dr. Bach, a clinical psychologist, testified that in his opinion defendant's brain was functioning normally when he saw the defendant in July 1983 and September 1985. The 1985 visit took place approximately six months after the incident. Dr. Bach went on to characterize the defendant's actions as "remarkably organized, planful, [and] reality laden." Dr. Stratford, a psychiatrist, and Dr. Walters, a clinical psychologist, generally agreed with Dr. Bach's assessment and concluded that the defendant was capable of acting purposely or knowingly on the date of the incident. The defendant did not testify at trial, but did raise the defense of mental disease or defect so as to negate the statutory element in deliberate homicide of knowingly or purposely causing the child's death.

The jury was instructed on deliberate, mitigated deliberate, and negligent homicide. The defendant requested instructions on felony and aggravated assault as well as antisocial conduct but the instructions were refused. The defendant was convicted of deliberate homicide.

4

The first issue is whether the District Court erred by refusing to instruct the jury on the lesser included offenses of aggravated assault and felony assault. The trial court only has to instruct on lesser offenses to which the evidence is applicable and the jury would be warranted in finding the accused guilty. State v. Koepplin (Mont. 1984), 689 P.2d 921, 925, 41 St.Rep. 1942, 1946. The facts in Koepplin were that the defendant admitted striking the deceased victim six to eight times with blunt force but nonetheless the defendant requested an instruction on negligent homicide. We noted that the evidence precluded any notion that the crime involved an ordinary slapping or beating and therefore an instruction on negligent homicide was not warranted. 689 P.2d at 925. Similarly, there is little, if any evidence in this case indicating the commission of aggravated assault or felony assault. To the contrary, the evidence reveals a series of calculated, relentless beatings of a helpless child with a belt, bungi cord, hairbrush, and the defendant's fists, resulting in the child's death. As in Koepplin, the defendant admitted that the beatings took place. Since the evidence does not support an instruction on aggravated assault or felony assault, the District Court was correct in refusing defendant's instructions on those offenses.

The second issue is whether the District Court erred by refusing defendant's instructions on the necessary mental state for conviction of deliberate homicide. The defendant argues that the State was required to prove that he knew that death would result from his actions. We reject this contention and hold that if an act which causes a death is done purposely or knowingly, deliberate homicide is committed. See State v. Sigler (Mont. 1984), modified, 688 P.2d 749, 758. A defendant acts knowingly when there is proof beyond a reasonable doubt that the defendant is aware

of the high probability of the result of his conduct. The State is not required to prove that the defendant knowingly and purposely intended the end result. The evidence shows that the defendant knowingly and purposely subjected a defenseless child to immense personal suffering through a series of beatings which culminated in the child's agonizing death. We hold that the evidence justified the giving of the court's instruction.

The third issue is whether the State must prove the absence of extreme mental or emotional stress beyond a reasonable doubt in a trial for deliberate homicide, once evidence of the stress has been introduced at trial by the defendant. The defendant offered the following instruction on deliberate homicide:

> To convict the Defendant of Deliberate Homicide, the State must prove the following elements:
>
> First, that the Defendant performed the acts alleged.
>
> Second, that when he did so, he acted purposely or knowingly.
>
> Third, that the Defendant caused the death of Beau Stanley.
>
> Fourth, that when he did so, he caused the death purposely or knowingly.
>
> Fifth, the acts leading to death were not committed under the influence of extreme mental or emotional distress for which there is a reasonable explanation or excuse.
>
> If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

> If, on the other hand, you find from your
> consideration of all the evidence that
> any of these elements has not been proved
> beyond a reasonable doubt, then you
> should find the defendant not guilty.

In essence, the defendant was attempting to place the burden of proof on the State as to the absence of mitigating factors. The trial court rejected the defendant's instruction. It is true that the State must prove every element of the crime charged beyond a reasonable doubt. State v. Gratzer (Mont. 1984), 682 P.2d 141, 41 St.Rep. 727. However, in a prosecution for deliberate homicide in which an instruction for mitigated deliberate homicide is also given, the State does not have to prove absence of mitigation beyond a reasonable doubt. Neither party has the burden of proof as to such mitigating factors. Gratzer, 682 P.2d at 146.

Since an instruction for mitigated deliberate homicide was given, the State, as in Gratzer, was not shouldered with the burden of proof as to the absence of mitigating factors. We therefore reject defendant's argument on this issue.

The final issue is whether the District Court erred by refusing defendant's instruction for antisocial conduct. The defendant proposed the following instruction:

> Antisocial conduct is defined as conduct
> which is marked by behavior deviating
> from the social norm. Anti-social
> conduct does not include suicide
> attempts, masochistic behavior,
> hallucinations, delusions, disturbed
> sleeping patterns, emotional lability, or
> physical complaints.

The defendant failed to establish an authoritative basis for his instruction, and the court rejected it, favoring the State's paraphrased version of State v. Watson (Mont. 1984), 686 P.2d 879, 41 St.Rep. 1452:

> [A]s used in this instruction, the terms mental disease or defect do not include an abnormality manifested only by repeated criminal or other anti-social conduct. If, however, there is other evidence that the Defendant had a mental disease or defect, you may consider repeated criminal or other anti-social conduct as a manifestation of a mental disease or defect.

We agree with the lower court that there is no authority for the giving of defendant's instruction. The court's instruction conforms to Montana law and was properly given to the jury.

    Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
Honorable C. B. McNeil,
District Judge