No. 83-138

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

WILLIAM RUSSELL SIGLER,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Carl Englund, argued, Missoula, Montana

For Respondent:

Mike Greely, Attorney General, Helena, Montana
Kim Kradolfer argued, Asst. Atty. General, Helena
Robert L. Deschamps, III, County Attorney, Missoula,
Montana: Robert J. Sullivan argued, Deputy County
Attorney, Missoula, Montana

Submitted: April 16, 1984

Decided: June 4, 1984

Filed: JUN 1984

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

William Russell Sigler appeals from a judgment of conviction in the District Court, Fourth Judicial District, Missoula County, of the deliberate homicide of 19-month-old Paul T. Wilkinson.

The issues we treat in this opinion are: (1) the admissibility of evidence of other crimes, wrongs or acts; (2) the admissibility of an inflammatory photograph; and (3) whether the instructions defining deliberate homicide were in error.

On February 23, 1982, 19-month-old Paul T. Wilkinson was found dead in the East Missoula trailer occupied by his mother, Kathleen Rachel Wilkinson and her male friend, the appellant William Russell Sigler.

Missoula County authorities had responded to a late afternoon call that a child in the residence had stopped breathing. When found, the child was naked and his stomach was noticeably distended and hard. The child was pronounced dead by Missoula County deputy coroner.

An autopsy was performed on the child and the examining pathologist found that the cause of death was blunt force trauma to the abdomen which perforated the small bowel in two places, causing acute inflammation of the abdomen, peritonitis and eventual death. The pathologist characterized the force causing the death as severe, and estimated that the injury to the child which resulted in the death occurred within 24 hours before his death and that most likely the cause of injury was a blow by a fist or a foot. He rejected any accidental fall as a cause because the force

would not be sufficient and because he found a number of other injuries of varying ages on the body of the child. The other injuries found during the autopsy included hemorrhage around the adrenal glands; an old untreated fracture of the right wrist; a contusion surrounding the left testis; a hematoma to the head; and numerous other abrasions, contusions, and scars on the head, face, abdomen, hands, back and legs. At least one of the scars could be attributed to a cigarette burn. Three additional medical doctors concurred with the pathologist's opinion that the death could not have been caused accidentally.

Evidence was introduced at trial of the past history of the child's care by his mother and Sigler. On the evening before the death, neighbors Donna Collins and Larry Strange had been in the trailer and were told the child was quite ill and vomiting that evening. Ms. Collins strongly advised that the child be taken to the doctor immediately.

Strange testified that he visited the trailer almost every day, that he usually observed the child to be sitting in his highchair or his potty chair and that the child would get quite tense when Sigler approached him. Strange saw Sigler give the child hard spankings, and once saw him pick the child up by the hand while he was being spanked. He stated that the child had been spanked for merely crying. He had seen cigarette burns on the child's hand and had seen a bruise underneath his left eye ten days to two weeks prior to the death. He saw Sigler once "whop" the child on the forehead when he would not eat. He heard the child vomiting about every 20 minutes to a half hour from 6:00 p.m. to 10:00 p.m. on the evening before the death.

Tim Keatron, the 16-year-old son of Donna Collins testified he was in the trailer home about three to four times a week. He had seen Sigler pick the child up by his arm and spank him and testified that the defendant hit the child hard for the child's size. Two days before the death, he had seen Sigler slap the child on the face so hard that it caused his head to nearly touch his shoulder and blood to come from his nose. The reason for that discipline was that the child would not eat his cereal. Keatron also had seen the defendant kick the child during the same period.

The mother testified that she had surrendered the discipline of the child to Sigler. None of the witnesses who testified saw the child's mother discipline the child in the manner exhibited by Sigler.

The defendant did not testify, but he had made statements to law officers during the early investigation of the incident. In the statements, he hypothesized that the child had been hurt by falling on a footlocker or on a large plastic dump truck. He further told the officers that on the morning of the death, the child appeared to be feeling better, that he had been fed, and that he was blabbering and talking to himself up to ten minutes before he was found not to be breathing. The medical witnesses discounted the possibility that this last testimony was correct.

The child's mother, Kathleen Wilkinson, a codefendant in the original action had entered into a plea bargain with the State in connection with her testimony. She testified that the child was healthy until the day before the death. She had gone to the trailer of Donna Collins at about 3:30 p.m., and at about 5:30 p.m. Sigler had appeared and ordered her to return to the home. She was told by Sigler that the child

had fallen out of bed. She examined the child, and found him acting sluggish and tired. The child vomited during the evening and refused to eat. She denied ever striking the child in the abdomen or face hard enough to leave a bruise.

The jury found Sigler guilty of deliberate homicide. This appeal ensued.

## I.

Sigler attacks the testimony of witnesses relating to other crimes, wrongs or acts by him toward the child on the grounds that the elements required in State v. Just (1979), 184 Mont. 262, 602 P.2d 957, and State v. Jensen (1969), 153 Mont. 233, 455 P.2d 631 were not met; that the acts of Sigler as testified to by the witnesses indicated only that Sigler spanked the child, slapped his hands, or flipped the child's head with his finger, none of which would have caused his death, and so are dissimilar to the acts which brought about the death of the child; and that the acts were no more than normal disciplinary procedures and were not "unusual and distinctive" so as to qualify for wrongful acts or crimes under State v. Hansen (Mont. 1980), 608 P.2d 1083, 37 St.Rep. 657.

The State replies that the evidence meets the guidelines imposed in Just, supra; that the evidence of prior acts of discipline are a part of the entire corpus delicti of the charged offense, citing State v. Riley (Mont. 1982), 649 P.2d 1273, 39 St.Rep. 1491; and that when a battered child is the victim, the pattern of conduct exhibited by the defendant-caretaker toward the child victim is within the scope of the issues before the court. State v. Tanner (Utah 1983), 675 P.2d 539.

The contention that the acts of discipline reported by the neighbor witnesses used by Sigler on the child are dissimilar to the kind of force required to bring about the child's death is not supportable. The mother testified that Sigler was the sole disciplinarian of the child. Under the evidence, his response to any perceived need for disciplining the child was always intemperate, and slipped into gear on the slightest provocation. His treatment of a 19-month-old infant was brutal, heedless and unfeeling. We cannot agree that his treatment constituted "normal" discipline.

In Just, we set out a four-element test to determine the admissibility of evidence of other crimes or acts in criminal prosecutions. They are (1) similarity of crimes or acts; (2) nearness in time; (3) tendency to establish a common scheme, plan or system; and, (4) the probative value of the evidence must not be substantially outweighed by the prejudice to the defendant.

The testimony of the witnesses here meets the Just elements in each particular, and in addition, meets our statement in State v. Brubaker (1979), 184 Mont. 294, 307, 602 P.2d 974, 981, relating to evidence of other crimes or acts:

> "For evidence of unrelated crimes to be admissible, as an exception to the general rule, it must appear that the evidence of the other crimes tends to establish a common scheme, plan, system, design or course of conduct similar to or closely connected with the one charged and not too remote; and the evidence must tend to establish crimes so related that proof of one tends to establish the other. Within those words must be found the paste and cover for the admissibility of the unrelated acts . . ."

The District Court here had a situation where only circumstantial evidence could bring out the case against the defendant. There were many reasons for a jury to distrust

- 6 -

the defendant's statement of the incident. We stated in Brubaker, that evidence of other crimes or acts should not be admitted if it leads the jury to surmise that the defendant was probably guilty of the offense. But when evidence of unrelated acts tends toward the conclusion that the defendant is guilty of the crime charged with moral certainty and beyond a reasonable doubt, it is certainly admissible. Brubaker, supra. In Tanner, supra, the Utah court pointed out that the only available link between the specific nature of the child's injuries and the caretaker may be the evidence of prior abusive conduct by the caretaker.

Evidence of other crimes, wrongs or acts is an exception to the general rule that evidence of a person's character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. Rule 404, M.R.Evid. A trait of character is to be distinguished from habit. "A habit is a person's regular response to a repeated specific situation." Rule 406, M.R.Evid. Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

> "Character may be thought of as the sum of one's habits though doubtless it is more than this. But unquestionably the uniformity of one's response to habit is far greater than the consistency with which one's conduct conforms to character or disposition. Even though character comes in only exceptionally as evidence of an act, surely any sensible man in investigating whether X did a particular act would be greatly helped in his inquiry by evidence as to whether he was in the habit of doing it." McCormick on Evidence § 162, at 341.

Under Rule 406, M.R.Evid., the acts habitually performed by Sigler in response to his perceived need for discipline of

the child were admissible. As a matter of habit, his discipline of the child was excessively harsh.

We find no error in the admission of the disciplinary acts administered by Sigler to the child.

II.

The second principal assignment of error by Sigler is that the District Court abused its discretion in receiving the photograph identified as State's exhibit 18FF into evidence.

The pathologist, on autopsy, discovered a subdural hematoma beneath the child's scalp. The pathologist took a photograph, the only photograph taken of that particular injury. The scalp was reflected or drawn back in order to show the injury because of the victim's long hair. Before allowing it into evidence, as the District Court required, the pathologist blocked portions of the slide pictures so that only the injury was shown.

Sigler contends that the exhibit was highly prejudicial and inflammatory and did not depict how the child would appear to another person. In effect, he is claiming that the prejudicial effect of the photograph outweighed its probative value.

Many of the photographs of the autopsy discoveries were admitted without objection. The subdural hematoma was another of the injuries that the child had received, the source of which was unexplained by his principal caretaker, Sigler. We hold that where the purpose of a photographic exhibit is to assist the jury in understanding the case, it is admissible, even though its effect may be prejudicial or inflammatory, if its probative value outweighs its prejudicial effect. See State v. Hoffman (1982), 196 Mont.

- 8 -

268, 272, 639 P.2d 507, 510; State v. Buckley (1976), 171 Mont. 238, 245, 557 P.2d 283, 286-287; State v. O'Donnell (1972), 159 Mont. 138, 142, 496 P.2d 299, 301-302. In this case we hold that the District Court did not abuse its discretion in admitting the photograph into evidence; that its probative value was more important than any prejudicial or inflammatory effect because the jury was entitled to know the nature and extent of the injuries suffered by the child and no other method would have shown it as graphically or as well. This Court has been consistent in holding similarly with respect to photographs. State v. Austad (1982), 197 Mont. 70, 82, 641 P.2d 1373, 1380; State v. McKenzie (1980), 186 Mont. 481, 505-506, 608 P.2d 428, 443-444, cert.den. 449 U.S. 1050 (1980); State v. Fitzpatrick (1973), 163 Mont. 220, 228-229, 516 P.2d 605, 610-611.

### III.

Sigler's final argument is that the District Court failed properly to instruct the jury considering the definition of the mental state "purposely." He contends that the statutory definition of purposely, coupled with the statutory definition of deliberate homicide confused the jury. Sigler asserts that under the instructions, the jury could convict if it found that he purposely engaged in the conduct of striking the child and that the jury did not need to find under the instructions that he intended the result, that is the death, or that he purposely caused the result, the death. He supports this contention with affidavits signed by several jurors after trial and filed with his motion for a new trial before the District Court.

In resolving this issue, we pay no attention to the affidavits of the jurors signed post-trial. They may not be

- 9 -

considered since they do not fit within the exceptions provided in Rule 606(b), M.R.Evid., nor within the purview of section 25-11-102(2), MCA.

The defendant made no objection to the instructions when they were offered during the trial. He would ordinarily be barred from raising his objections now before this Court. If, however, the District Court had erred in the vital definition of "purposely" in this case, we would have to reverse, even without objection raised by counsel at trial, on the grounds of plain error. Therefore, giving Sigler the benefit of every doubt, we proceed to consider the issue raised by him with respect to these instructions.

The court charged the jury as to the elements of the crime in its instruction no. 15:

"To sustain the charge of deliberate homicide, the State must prove the following propositions:

"First, that the defendant performed the acts causing the death of Paul T. Wilkinson, Jr.

"Second, that when the defendant did so, he acted purposely or knowingly . . ."

The court also gave these instructions defining "purposely," "knowingly," and "deliberate homicide:"

"Instruction No. 12. A person acts purposely with respect to a result or to conduct described by statute defining an offense if it is his conscious object to engage in that conduct or to cause that result.

"Instruction No. 13. A person acts knowingly with respect to conduct when he is aware of his conduct.

"A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct.

"Instruction No. 14. A person commits the offense of deliberate homicide if he purposely or knowingly causes the death of another human being."

We need always to remind ourselves that in Montana, crimes against the State are defined by statutes. In those statutes we will generally find the provisions that frame the rights of the State to prosecute its defined crimes and that preserve the rights of the defendant to be convicted only of statutorily-defined crimes upon proof beyond a reasonable doubt.

In Montana, a person commits a criminal homicide if he voluntarily causes the death of another human being, purposely, knowingly or negligently. Sections 45-5-101 and 45-2-202, MCA. "Purposely" and "knowingly" have replaced the concepts of malice and intent known to our former law. Sections 45-2-101(33) and (58), MCA. In short, the voluntary act of a person, if not justifiable (Title 45, Ch. 3, MCA), knowingly, purposely, or negligently done is criminal homicide if it <u>causes</u> the death of another human being. Section 45-5-101.

In a criminal homicide prosecution, therefore, the State must prove and the jury must find beyond a reasonable doubt that the voluntary and unjustified act of the defendant, purposely, knowingly or negligently caused the death of the victim. Proof of cause is a primary duty of the State, and a necessary element to be found by the jury for a proper conviction in a criminal homicide case.

Montana law defines what constitutes a causal relationship between conduct and result. Section 45-2-201, MCA. Conduct is the cause of a result, as applicable to this case, if (a) without the conduct the result would not have occurred; and, (b) if the <u>result</u> was not within the contemplation or purpose of the offender, but the same kind of harm or injury was contemplated by him though the precise

harm or injury was different or occurred in a different way. Section 45-2-201, MCA.

Applying section 45-2-201 to this case, the proof is beyond any doubt that the conduct which brought about the perforations to the child's bowels caused the death of the child, and that without such conduct, the death would not have occurred. In addition, the result involves the same kind of harm or injury as contemplated by the conduct even though the precise harm, the death, was different or occurred in a different way. In other words, if Sigler voluntarily, as the jury found, punched with his fist or kicked with his foot the stomach of the child, even though he may not have intended that death result from the act, he contemplated "the same kind of harm or injury" to the child, that is, harm or injury to the abdominal area of the child.

Moreover, there are two ways in which a person can act "purposely" with respect to a result or conduct described by the statute defining an offense. Section 45-2-101(58), MCA. He acts purposely if it is his conscious object (1) to engage in that conduct, or (2) to cause that result. Either proposition will sustain the finding of the jury that the defendant acted purposely. Section 45-2-101(58), MCA.

In this case, there is no claim by the defendant of justification, mitigation or excuse. In his statements he did not admit that he performed any act or acts which brought about the death of the child.

In the same way, our statutory definition of "knowingly" cuts two ways. Applied here, Sigler acted knowingly with respect to his conduct if he was aware of his conduct. He acted knowingly with respect to the result of his conduct if

- 12 -

he was aware that it was highly probable that such a result would be caused by his conduct. Section 45-2-101(33), MCA.

It is therefore true that under the instructions given in this case, and under the statutes defining crimes, the State is not required to prove the specific intent of the defendant to cause the death of the child. We have said:

> "We do not agree with Starr, however, on his contention that it was the duty of the State to prove Starr's specific intent to transfer a dangerous substance then or at a subsequent time. Since Montana revamped its criminal statutes in 1973 by adopting in essence the Model Penal Code, specific intent is not an elemental concept, unless the statute defining the offense requires as an element thereof a specific purpose . . ." (Emphasis in original.) State v. Starr (Mont. 1983), 664 P.2d 893, 897, 40 St.Rep. 796, 801.

A few examples of the effect of deletion of specific intent from our statutory scheme will demonstrate the point: proof beyond a reasonable doubt that a defendant consciously shot another with a gun where no circumstances of mitigation, excuse or justification appear, and the other died from the gunshot, will suffice to convict the defendant of deliberate homicide, without proof that death was the intended result by the defendant; proof beyond a reasonable doubt that a defendant consciously decided to drive his automobile against the person of a pedestrian where no circumstances of mitigation, excuse or justification appear, and the pedestrian died of the collision with his person, will suffice to convict the defendant of deliberate homicide, without proof that the death of the pedestrian was the intended result of the defendant.

Our criminal law proscribes purposely doing an act which causes the death of another; it also proscribes doing an act with the conscious object of causing the death of another. In the former, death may not be the intended result, but if

- 13 -

the act which causes the death is done purposely, deliberate homicide is committed. In the latter, death is the intended result, and any act of the defendant which leads to that intended result is deliberate homicide.

In this case, as we have said, there are no issues of mitigation, justification or excuse. The circumstantial evidence here is strong enough to sustain the finding by the jury that the defendant purposely engaged in conduct which resulted in the death of the child. The instructions given to the jury required no more and no less for the prosecution to prove in this case. Therefore, the instructions given properly reflected the applicable law. We find no error in the instructions given.

IV.

The judgment of conviction of William Russell Sigler for deliberate homicide is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice Daniel J. Shea and Mr. Justice Frank B. Morrison, Jr., dissent and will file written dissents later.

- 14 -

NO. 83-138

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

WILLIAM RUSSELL SIGLER,

Defendant and Appellant.

---

Dissent of Mr. Justice Frank B. Morrison, Jr.

---

Majority Opinion handed down: June 4, 1984

Dissent filed: JUN 7 - 1984

_Ethel M. Harrison_
Clerk

Mr. Justice Frank B. Morrison, Jr. respectfully dissents as follows:

Instruction No. 14 stated the elements of deliberate homicide. The trial court said:

> "A person commits the offense of deliberate homicide if he purposely or knowingly <u>causes</u> the death of another human being."

This instruction is an accurate paraphrase of the elements of deliberate homicide found in sections 45-5-101 and 45-5-102, MCA. An essential element of the offense is that the defendant purposely or knowingly <u>caused</u> the death of another.

Trial court's instruction No. 15 was clearly erroneous. That instruction said:

> "To sustain the charge of deliberate homicide, the State must prove the following propositions:
>
> > "First, that the defendant performed the acts causing the death of Paul T. Wilkinson, Jr.
> > "Second, that when the defendant did so, he acted purposely or knowingly."

The court failed to instruct the jury that they must find the defendant acted with knowledge or purpose in <u>causing</u> the death as required by section 45-5-101 and 45-5-102, MCA. The trial court told the jury to convict defendant if the jury found that defendant acted with purpose or knowledge in performing the acts which resulted in death, irrespective of whether defendant purposely or knowingly <u>caused</u> the death. Under the court's instruction No. 15 the jury was required to convict the defendant of deliberate homicide even though they might find the victim's death was accidental.

The majority was unable to reconcile instruction No. 15 with the statutory definition of deliberate homicide and so, to achieve the desired result, simply amended the statute. The majority states:

> "Our criminal law proscribes purposely doing an act which causes the death of another; it also proscribes doing an act with the conscious object of causing the death of another. In the former,

death may not be the intended result, but if the act which caused the death is done purposely, deliberate homicide is committed. * * *"

By judicial fiat, the law in Montana is that a defendant who acts with purpose and accidentally causes the death of another, is guilty of deliberate homicide. In other words, if one strikes another on the jaw with his fist, and the one struck falls to the ground striking his head upon the curbing, and death ensues, the offense is deliberate homicide.

This case perfectly illustrates the evil inherent in result-oriented decision making. Defendant Sigler's conduct may well have resulted in the death of an infant child. If believed, the State's case leaves little room for sympathy for Sigler. These inflamatory factual settings provide the genesis for irrational and unworkable legal principles.

I would reverse and remand for a new trial for the reason that court's instruction No. 15 failed to include an essential element of the crime of deliberate homicide.

Justice

DISSENT OF MR. JUSTICE DANIEL J. SHEA

No. 83-138

State of Montana

    vs.

William Russell Sigler.

FILED

JAN 8 1985

*Ethel M. Harrison*
CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice Daniel J. Shea dissenting:

I agree with the dissent of Mr. Justice Morrison in that I also believe that jury instruction no. 15 misstates Montana law and constitutes reversible error. The erroneous instruction, could easily mislead a jury into thinking that as long as the acts which resulted in death were performed purposely or knowingly, a conviction for deliberate homicide could be sustained, whether or not the defendant purposely or knowingly caused the death. At the very least instruction no. 15 is ambiguous and subject to more than one interpretation.

I would hold that jury instruction no. 15 fails to include the necessary causal element of deliberate homicide, and therefore this case should be remanded for a new trial.

Daniel J. Shea
Justice

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 83-138

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

WILLIAM RUSSELL SIGLER,

Defendant and Appellant.



FILED

OCT 13 1984

*Ethel T. . . . . . arrison*
CLERK OF SUPREME COURT
STATE OF MONTANA

ORDER AND OPINION ON PETITION FOR REHEARING

In his petition for rehearing Sigler takes issue with this language in our opinion:

> "Our criminal law proscribes purposely doing an act which causes the death of another; it also proscribes doing an act with a conscious object of causing the death of another. In the former, death may not be the intended result, but if the act which causes the death is done purposely, deliberate homicide is committed."

Sigler contends that the above language "broadens the definition of a most serious crime," and eliminates the crime of negligent homicide. The State agrees with this assessment. The Attorney General has thus conceded the major premise of the minority opinion filed with the original in this case. A concession of such broad dimensions does not wring from the Attorney General an admission that Sigler is entitled to a new trial however. Instead the State continues to contend that the jury in the Sigler case was "adequately instructed." Yet if under the original opinion in this case, Sigler could have been convicted of deliberate homicide for an accidental killing of the child, he would, indeed, as the minority contended, be entitled to a new trial.

- 1 -

We reject the contention that our original opinion in this case has eliminated the crime of negligent homicide or broadened the crime of deliberate homicide. To show why, we must again discuss the effect of the adoption of the Model Penal Code in our criminal statutes in 1973.

To begin with, specific intent is not an elemental concept of a crime under the present criminal code unless the statute defining the offense requires as an element thereof a specific purpose. State v. Starr (Mont. 1983), 664 P.2d 893, 897, 40 St.Rep. 796, 801. The State in this case was not required to prove a specific intent on the part of Sigler to kill the child when he kicked his stomach.

In State v. Gratzer (Mont. 1984), 682 P.2d 141, 145, 41 St.Rep. 727, 731, we said:

> "The effect of the adoption of the 1973 Criminal Code in Montana was to change radically our legal concepts for proof of homicide. Formerly, the presumption of proof of a killing was that the lesser crime had been committed, and the State had the duty of going forward with the evidence beyond a reasonable doubt that the greater had been committed. Now, the legal effect of proof of a killing is that the greater crime has been committed, that of deliberate homicide, unless the evidence shows mitigation, excuse, or justification . . ." 682 P.2d, at 145.

In this case, the Sigler jury was instructed that the homicide was deliberate if a death of a human being was caused, purposely or knowingly. The jury was also instructed that a person acts purposely with respect to a result or to conduct constituting a crime, if it is his conscious object to engage in the conduct or to cause that result. Section 45-2-101(58), MCA. The court also instructed the Sigler jury on the meaning of "knowingly" which is important here. The jury was told that a person acts knowingly with respect to conduct when he is aware of his conduct, and that he acts

- 2 -

The majority opinion therefore does not abolish the crime of negligent homicide. Rather it emphasizes the statutory elements of the crime which the jury found in this case. It should be clear, following our original Sigler opinion, that deliberate homicide is committed when a person purposely or knowingly causes the death of another ·human being; and that the word "causes" in the statutory definition of deliberate homicide must be read in conjunction with section 45-2-201, MCA, which describes what constitutes a causal relationship between the conduct and the result. The original opinion states again what had been stated in Coleman, supra, that a person acts knowingly when there is proof beyond a reasonable doubt that he is aware of the high probability of the result of his conduct. Finally, there is a causal relationship though the result is not within the contemplation of or purpose of the defendant, where the same kind of harm or injury is contemplated by him though the precise harm or injury is different or occurred in a different way.

Negligent homicide under our statute does not include the mental states of "purposely" or "knowingly." Section 45-5-104, MCA. A homicide is committed negligently when the person acts negligently with respect to a result or consciously disregards a risk that the result will occur, or when he disregards a risk of which he should be aware that the result will occur. Section 45-2-101(37), MCA. The person's negligence must be such that to disregard the risk involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. Section 45-2-101(37).

- 4 -

It is the presence of purposeful or knowing action, as defined by our statutes, that distinguishes deliberate or mitigated homicide from negligent homicide.

IT IS ORDERED:

Accordingly, we deny the petition for rehearing and modify the paragraph to which exception was taken by the defendant and the State to insert the word "knowingly" as follows:

> "Our criminal law proscribes purposely doing an act which causes death of another; it also proscribes doing an act with the conscious object of causing a death of another. In the former, death may not be the intended result, but if the act which causes the death is done purposely or knowingly deliberate homicide is committed. In the latter, death is the intended result and any act of the defendant which leads to that intended result is deliberate homicide."

_____
Justice

We Concur:

c

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice Daniel J. Shea and Mr. Justice Frank B. Morrison, Jr., would grant a rehearing.

-5-