JUSTICE TRIEWEILER
specially concurring in part and dissenting in part.
I concur with the majority’s conclusions regarding Issues 1, 4, 5, and 8-11.
I specially concur with those parts of the majority opinion which relate to Issues 3, 6, and 12. However, although I concur with the result reached, I do not agree with all that is said in the majority opinion with regard to these issues.
I dissent from the majority’s conclusions as they relate to Issues 2 and 7.
With regard to Issue 2,1 dissent from the majority’s conclusion that Montana’s treatment of the insanity defense does not violate defendant’s right to due process. For the reasons stated in my dissent to the majority’s opinion in State v. Cowan (Mont. 1993), 861 P.2d 884, 50 St. Rep. 1153, I conclude that Montana’s abolition of the insanity defense in 1979 violated defendant’s right to due process of law guaranteed under the Fourteenth Amendment to the United States Constitution, and Article II, Section 17, of the Montana Constitution.
Anyone unfamiliar with Montana’s treatment of insane people who are charged with crimes would believe, based on the majority opinion, that they are treated more favorably now than before the statutory changes which were made in 1979. That is not correct.
Based on the Legislature’s abolition of the insanity defense in 1979, and this Court’s approval of that change in State v. Korell (1984), 213 Mont. 316, 690 P.2d 992, persons in Montana can be convicted of serious crimes and sentenced to confinement in the State Prison, even *50 though at the time of the acts with which they are charged they were unable to appreciate the criminality of their conduct or were unable to conform their conduct to the requirements of the law because of mental illness. In addition to Montana, only the states of Utah and Idaho allow punishment of the mentally ill, and no U.S. Supreme Court decision has ever held that such treatment of the mentally ill satisfies the due process clause of the Fourteenth Amendment to the United States Constitution.
I conclude that the majority’s reliance on Leland v. State of Oregon (1952), 343 U.S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302, is misplaced. While the U.S. Supreme Court did hold in that case that the defendant was not constitutionally entitled to a specific form of the insanity defense, it is implicit from that decision that some form of an insanity defense is required by the due process clause. In fact, subsequent to this Court’s decision in Korell, the California Supreme Court cited Leland for exactly the opposite purpose for which it is cited by this Court. In People v. Skinner (Cal. 1985), 704 P.2d 752, the California Supreme Court, while discussing the due process dimensions of the insanity defense, stated that:
Because mens rea or wrongful intent is a fundamental aspect of criminal law, the suggestion that a defendant whose mental illness results in inability to appreciate that his act is wrongful could be punished by death or imprisonment raises serious questions of constitutional dimension under both the due process and cruel and unusual punishment provisions of the Constitution. In Leland v. Oregon (1952), 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302, the court upheld an Oregon law placing the burden of proving insanity beyond a reasonable doubt on the defendant and affirmed the right of the state to formulate the applicable test of legal insanity. In so doing, however, the court measured the law under due process standards, concluding that the irresistible impulse extension of traditional insanity test was not “ ‘implicit in the concept of ordered liberty.’ ” (343 U.S. at p. 801, 72 S.Ct. at 1009). The court thus seemingly accepted the proposition that the insanity defense, in some formulation, is required by due process. (See also Robinson v. California (1962), 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758, suggesting that punishment for the status of being mentally ill would constitute cruel and unusual punishment.) Scholars, too, suggest that abolition of the traditional insanity defense may be constitutionally impermissible if the result would be imposition of punishment on a mentally ill person for acts done *51 without criminal intent. (See Robitscher & Haynes, In Defense of the Insanity Defense (1982) 31 Emory L.J. 9; Note, The Proposed Federal Insanity Defense: Should the Quality of Mercy Suffer for the Sake of Safety (1984) 22 Am.Crim.L.Rev. 49.)
This court suggested a similar view in People v. Coleman (1942), 20 Cal.2d 399, 407,126 P.2d 349, where we observed: “Obviously an insane person accused of crime would be inhumanely dealt with if his insanity were considered merely to reduce the degree of his crime or the punishment therefor.”
Skinner, 39 Cal.3d at 774-75, 704 P.2d at 757-58.
Montana’s statutory scheme for dealing with mental illness does exactly what the California Supreme Court suggests would violate due process and cruel and unusual punishment provisions of the Constitution. It allows for conviction and punishment of those who are unable to appreciate the criminality of their conduct, and it substitutes for the insanity defense the mere option of the district court to take mental illness into consideration when deciding the degree of punishment or nature of the defendant’s confinement.
While evidence of mental disease or defect is admissible to prove that a defendant did not have a state of mind that is an element of the offense, it is clear that Montana’s law does not take into consideration the defendant’s ability to appreciate the criminality of his conduct or conform his conduct to the law. The only state of mind that had to be proven to convict the defendant in this case was that he acted knowingly and purposely at the time of the illegal conduct with which he is charged. Based on Montana’s definitions of knowingly and purposely, he could act with both states of mind and still not appreciate the criminality of his conduct nor be able to conform his conduct to the law.
The majority’s conclusion that abolition of the insanity defense does not violate the due process clauses of the Montana or Federal Constitutions is based largely on its prior decision in. Korell, and that decision’s interpretation of Leland.
The inadequacy of this Court’s decision in Korell, and the inaccuracy of its analysis oí Leland is thoroughly set forth by the dissenting opinion of Justice McDevitt in State v. Searcy (1990), 118 Idaho 632, 798 P.2d 914. I agree with that analysis, and would follow it in this case.
The only reported decision outside of Montana which I am familiar with and which specifically upholds abolition of the insanity defense is the majority opinion in Searcy. In his well-documented opinion *52 dissenting from that decision, Justice McDevitt made several important points.
First, he examined the various tests for due process that have been set forth over the years. He observed that:
In Palko v. Connecticut, 302 U.S. 319, 324-25, 58 S.Ct. 149, 151-52, 82 L.Ed. 288 (1937), Justice Cardozo wrote that those particulars of the Bill of Rights which must be held to apply as against the States through the Fourteenth Amendment Due Process Clause are those which “have been found to be implicit in the concept of ordered liberty, ...” such that “a fair and enlightened system of justice would be impossible without them.”
Searcy, 118 Idaho at 645, 798 P.2d at 927.
He noted that:
The underlying theme of these various formulations of “due process” is a sense of historical precedent upon which American institutions were founded and our continuing legal traditions. Thus, the proper focus in evaluating the place of a particular doctrine in the concept of due process is the pervasiveness of the doctrine in the history of the common law. Areview of the extensive history of the insanity defense in the law of England and the United States leads to the conclusion that due process does require the availability of that defense to criminal defendants.
Searcy, 118 Idaho at 646, 798 P.2d at 928.
As noted in Justice McDevitt’s dissent, the insanity defense has existed as an excuse to crime from the time of the reign of Edward I during the 13th Century, and was well established by the 16th Century. Searcy, 118 Idaho at 646-47, 798 P.2d at 928-29. He pointed out that as early as the 18th Century there was recorded case law to the effect that a man deprived of reason cannot be guilty. The jury was so instructed in Rex v. Arnold, 16 How.St.Tr. 695 (1724). American cases closely tracked English law from the time that insanity was first considered as a defense in this Country’s courts. In re Clark, 1 City Hall Recorder (N.Y.) 176 (1816), and In re Ball, 2 City Hall Recorder (N.Y.) 85 (1817).
Then, in 1843,M’Naughten’s Case, 8 Eng.Rep. 718 (H.L. 1843), was decided. That case provided that a person suffering from disease of the mind, to the extent that they did not know the nature and quality of their conduct, or did not know that what they were doing was wrong, could not be guilty of a crime. The M’Naughten rule, in some form or another, has been followed in virtually every American jurisdiction until 1979. However, whether following the M’Naughten *53 rule, or some other variation of the insanity defense, McDevitt points out that the appropriateness of the defense has rarely been questioned.
Second, McDevitt pointed out that there were three legislative attempts to abolish the insanity defense between 1910 and 1931, but that each of those legislative enactments were overturned by the state supreme courts where they were attempted. Searcy, 118 Idaho 650, 798 P.2d at 932. Referring to this Court’s discussion of those decisions in Korell, Justice McDevitt pointed out that:
The Montana Supreme Court, in its recent decision upholding the 1979 abolition of the defense in Montana, effortlessly distinguished those three cases because “[t]hey interpret statutes that precluded any trial testimony of mental condition, including that which would cast doubt on the defendant’s state of mind at the time he committed the charged offense.” Korell, 213 Mont. at 329, 690 P.2d at 999 (emphasis in original). The Korell court felt that Montana’s allowance for psychiatric evidence going to the issue of mens rea at trial removed any precedential value from those three prior cases. However, I believe that two of those cases have greater applicability to the issues faced in Korell and by this Court than the Montana Supreme Court would allow.
Searcy, 118 Idaho at 650, 798 P.2d at 932.
For the reasons mentioned by the dissent in Searcy, I agree. Finally, the dissenting opinion in Searcy points out that:
Another, albeit less authoritative, test of whether a particular doctrine is “implicit in the concept of ordered liberty” other than the history of the legal concept, is the unanimity with which the doctrine is adopted among American jurisdictions. With the exception of the three attempted legislative abolitions of the insanity defense noted above, and the recent rejections of the defense in Montana (1979), Idaho (1982), and Utah (1983), the insanity defense has been universally accepted in all American jurisdictions throughout this nation’s history.
Searcy, 118 Idaho at 652, 798 P.2d at 934.
Based upon the foregoing, and based on the inapplicability of those authorities relied upon by the majority of the Idaho Supreme Court and the majority of this Court, the dissent in Searcy concluded that:
I believe it is evident that the defense has an independent existence of sufficient duration and significance to entitle it to a place in our American concept of “ordered liberty.”
Searcy, 118 Idaho at 645, 798 P.2d at 927.
I agree.
*54 I believe as strongly as anyone that innocent people must be protected from those who are a danger to society, whether their behavior results from mental disease or simply an antisocial personality. However, the alternative to imprisoning those whose behavior results from insanity, over which they have no control, is not to turn them loose on society. Our law prior to 1979 provided that when a defendant is acquitted based on the defense of mental disease or defect, he or she must be committed to the custody of the superintendent of the Montana State Hospital for so long as he or she remains a threat to society. Section 95-508, R.C.M. (1947). That procedural safeguard has been carried forward to our current statutory scheme. Section 46-14-301, MCA.
I do not mean to infer from this dissent that this defendant could have satisfied the burden of proof with regard to Montana’s former insanity defense. However, I conclude that because he was denied the opportunity to have a jury decide whether, due to mental disease or defect, he was unable to appreciate the criminality of his conduct or conform his conduct to the requirements of the law, he was denied due process of law.
I also dissent from the majority’s conclusion that the District Court did not err when it instructed the jury that defendant could be convicted of deliberate homicide if his conduct was purposeful and knowing, regardless of whether he intended the results of his conduct.
The crime of deliberate homicide is defined at § 45-5-102, MCA. That statute provides that:
(1) A person commits the offense of deliberate homicide if:
(a) he purposely or knowingly causes the death of another human being .... [Emphasis added.]
The jury was correctly instructed in the District Court’s Instruction No. 11 that “[a] person commits the offense of deliberate homicide if he purposely or knowingly causes the death of another human being.”
However, the jury was incorrectly instructed by the District Court in Instruction Nos. 17 and 18. In Instruction No. 17, the jury was told that the State could convict the defendant of the offense of deliberate homicide if it merely proved the following elements:
1. That the defendant caused the death of James Allen Clevenger, a human being; and
2. That the defendant acted purposely or knowingly.
*55 Instruction No. 18 was a mirror reflection of No. 17, except that it referred to the other victim, Brian Peter Boeder.
In other words, although by statute in Montana, the crime of deliberate homicide is limited to the knowing or purposeful causation of someone’s death, these instructions, and this Court’s previous decision in State v. Sigler (1984), 210 Mont. 248, 688 P.2d 749, allow conviction for deliberate homicide where a defendant acts knowingly or purposely, even though it was not his purpose to cause anyone’s death and he did not know that death would result from his conduct. This is an example of judicial activism in the extreme. I agree with Justice Morrison’s dissent to Sigler wherein he states that:
By judicial fiat, the law in Montana is that a defendant who acts with purpose and accidently causes the death of another, is guilty of deliberate homicide. In other words, if one strikes another on the j aw with his fist, and the one struck falls to the ground striking his head upon the curbing, and death ensues, the offense is deliberate homicide.
This case perfectly illustrates the evil inherent in result-oriented decision making. Defendant Sigler’s conduct may well have resulted in the death of an infant child. If believed, the State’s case leaves little room for sympathy for Sigler. These inflammatory factual settings provide the genesis for irrational and unworkable legal principles.
Sigler, 210 Mont. at 262, 688 P.2d at 756.
Based on the facts in this case, correct instructions regarding the required mental state may not have changed the outcome. However, this Court’s willingness to freely amend the law in order to accomplish a desired result will have potentially dangerous consequences in the future. While this maybe a popular approach, I decline to participate.
For these reasons, I dissent to Issues 2 and 7 of the majority opinion.
JUSTICE HUNT joins in the foregoing concurrence and dissent.